# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ALFRIEDA SUE ANN RHINE, | NO. C10-5779-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Alfrieda Sue Ann Rhine appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## I.   FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 32 year-old woman with a 9th grade education spent in special education classes. Administrative Record ("AR") at 36, 260. Her past work experience consists of being a hotel housekeeper. AR at 21. Plaintiff was last

REPORT AND RECOMMENDATION - 1

gainfully employed in 2006. AR at 15. On November 1, 2007, plaintiff filed a claim for SSI and DIB payments. AR at 15.

The Commissioner denied plaintiff's claim initially and on reconsideration. *Id.* Plaintiff requested a hearing which took place on February 11, 2010. AR at 29-56. On April 29, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Rhine bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 29, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act for the period beginning October 1, 2006, and through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date.

3. The claimant has the severe impairments of a vision impairment with no vision in the right eye and deficits in the left eye, an anxiety disorder not otherwise specified, a personality disorder, and rule out of borderline intellectual functioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), with the exception of no climbing of ladders, ropes, or scaffolds; no heights or moving machinery; no driving at night; poor or limited depth perception; no fine vision work; and simple unskilled work, with semi-skilled and skilled work being precluded.

6. The claimant is capable of performing past relevant work as a hotel housekeeper. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006, through the date of this decision.

AR at 17-22.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ fail to develop the record?

REPORT AND RECOMMENDATION - 5

2. Did the ALJ properly evaluate the medical evidence?

3. Did the ALJ err in making an adverse credibility determination?

4. Did the ALJ evaluate the lay witness testimony properly?

5. Did the ALJ err in his RFC determination?

6. Did the ALJ err in concluding the plaintiff could perform her past relevant work?

7. Did the ALJ err at alternative Step 5?

Dkt. 16 at 9, 10, 12, 15, 16, 17.

## VII. DISCUSSION

### A. The ALJ Erred by Failing to Develop the Record

In 1997, plaintiff had been found to be disabled due to severe impairments of "retinal fibroplacia resulting in an enucleated right eye and monocular aphakia in her left eye and the peripheral vision in her left eye is subnormal, and borderline intellectual functioning." AR at 65. Plaintiff apparently lost her SSI benefits for non-medical reasons, because her husband's income exceeded a threshold amount for qualification. AR at 15.

In the first disability opinion, the ALJ noted:

> The medical evidence of record also shows the claimant was diagnosed with borderline intellectual functioning. In January 1995, the claimant underwent a psychological evaluation with James R. Adams, Ph.D. Testing revealed she has a Full Scale IQ score of 71 with a Verbal scale IQ score of 70 and a Performance IQ score of 74. Dr. Adams noted that the claimant had limited judgement [sic] and that her persistence and pace were below average to poor. Dr. Adams opined that because of her borderline reading skills, her deficient math skills, and her questionable judgement [sic], she was not capable of managing her own funds.
>
> ***
>
> Because of her borderline intellectual functioning (IQ of 71) she is limited to simple repetitive 1-2-3 step tasks, limited decision making responsibilities, and only occasional contact with the public.

AR at 63-64.

REPORT AND RECOMMENDATION - 6

In the ALJ's opinion at issue, the ALJ described plaintiff's severe impairments as follows:

> The claimant has the severe impairments of a vision impairment with no vision in the right eye and deficits in the left eye, and anxiety disorder not otherwise specified, a personality disorder, and rule out of borderline intellectual functioning.

AR at 17. As to plaintiff's mental impairments, the ALJ based his conclusions on the lack of "mental health treatment, medications, or the like" and on a 2008 consultative evaluation by Tom M. Dooley, Psy.D. AR at 18. Dr. Dooley opined that plaintiff had a poor fund of knowledge and difficulty with abstract thinking. He also noted plaintiff completed only the ninth grade and was in special education throughout her academic career. AR at 260. He made a diagnosis of anxiety disorder not otherwise specified, a personality disorder and rule out of borderline intellectual functioning. AR at 263. Apart from the tests of 3 objects recall, serial 3's, serial 7's (which plaintiff refused to even try), spelling WORLD (which plaintiff could do forward but not backward), and the meaning of a proverb (which plaintiff failed), no tests were conducted. AR at 262.

The ALJ made passing reference to the previously conducted IQ tests taken by plaintiff, when he found she did not meet a Listing under 12.05, as she had a full scale score above 70. AR at 19. The regulations provide that "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . [the] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.00(A). The 12.05(C) listing describes mental retardation as a condition characterized by

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports

> onset of the impairment before the age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.05.

Thus, a 12.05(C) listing requires an ALJ to find that the plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22. A formal diagnosis of mental retardation is not necessary to meet a 12.05 Listing. *See Christner v. Astrue,* 498 F.3d 790, 793 (8th Cir. 2007); *Frazier v. Astrue*, 2010 WL 3910331, *4 (E.D. Wash. 2010).[2]

Here, plaintiff had an apparently valid verbal IQ test result of 70, as indicated in her earlier disability determination. Under the regulations, this is not excused by a one point higher Full Scale IQ of 71, which is what the ALJ attempted to do in the current case ("Further, specifically as to the 12.05 criteria, testing gives a full scale score above 70 …"). More importantly, even if the Full Scale IQ score of 71 was to be considered determinative, it is simply at odds with the diagnosis of "rule out borderline functioning," as found by the ALJ based on Dr. Dooley's report. `

The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart,* 454 F.3d 1063, 1068-69 (9th Cir. 2006). Although Dr. Dooley conducted no tests that could measure the plaintiff's IQ, he

---

[2] This decision does not necessarily require the ALJ to find a Listing under 12.05, although the Court notes that plaintiff's blindness in her right eye, anxiety and personality disorder, and the fact that she attended special education classes and did not proceed beyond the 9th grade could possibly satisfy the other Listing criteria. On remand, the ALJ is directed to reevaluate plaintiff's mental impairments and in that process can consider whether plaintiff meets a Listing.

commented that plaintiff "did poorly with her mental health status cognitive issues and presented as someone as below IQ. She had a poor fund of knowledge, difficulty with abstract thinking and questionable social judgment." AR at 263. The ALJ had a disability determination that found plaintiff disabled, for among other reasons, borderline intellectual functioning. The ALJ also had information stating the plaintiff finished only the 9th grade and was always in special education classes when she attended. Under all the circumstances of this case, the Court can only conclude that the ALJ failed in carrying out his special duty to fully and fairly develop the record. This case will be remanded to permit the ALJ to do this.

On remand, the ALJ will reevaluate the plaintiff's impairments, including her mental health impairments. In light of the record, this will require plaintiff's 12.05 issues be specifically addressed, and that plaintiff be re-examined, if necessary.

      B.     <u>Remand Requires Reevaluation of the Other Assignments of Error</u>

The error described above could have a significant impact on the remaining assignments of error alleged by plaintiff. For example, this could explain some of the difficulties she had in completing her job at the Marriott, her credibility, her RFC, the weight to be given to the comments of the lay witnesses.[3] Alternatively, depending on the finding of the ALJ after the record is fully developed, it may turn out to have no weight. Because the error could have such an impact, the ALJ is directed to revisit the entire disability analysis on remand after developing the record.

//
//
//

---

[3] The Court does note that it appears the ALJ's assessment of the lay witness statements appears to fall short of the analysis required. Testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner to develop the record fully and to reapply the sequential disability evaluation process in light of the fully developed record. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of September, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge